IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


L. THOMAS MILLS,                                    CV 05-6336-MA

                    Plaintiff,                      OPINION AND ORDER

        v.

JO ANNE B. BARNHART, Commissioner
of Social Security,

                    Defendant.

        KATHRYN TASSINARI
        DREW L. JOHNSON
        1700 Valley River Drive, First Floor
        Eugene, OR  97401

            Attorney for Plaintiff

        KARIN J. IMMERGUT
        United States Attorney
        NEIL J. EVANS
        Assistant United States Attorney
        1000 S.W. Third Avenue, Suite 600
        Portland, OR  97204-2902


1 - OPINION AND ORDER

JEFFREY BAIRD
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075

    Attorneys for Defendant

MARSH, Judge:

**<u>INTRODUCTION</u>**

    Plaintiff, L. Thomas Mills (Mills), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act).  The court has jurisdiction under 42 U.S.C. § 405(g).

    Mills alleged disability beginning June 23, 2000, based on a history of cardiac disease and myocardial infarction, a history of neuroma of the feet, sensory neuropathy, and back pain.  He was 69 years old at the time of the hearing before an Administrative Law Judge (ALJ) on March 18, 2004, after which the ALJ found him not disabled.  He has an Associate's Degree in Electronic Engineering and 33 years of work experience as an Engineer for Hewlett Packard.

    After the Appeals Counsel denied Mills' request for review on September 14, 2005, the ALJ's decision denying his application became the final decision of the Commissioner, from which he seeks judicial review.

2 - OPINION AND ORDER

On appeal to this court, Mills alleges the ALJ erred by: (1) failing to provide legally sufficient reasons for rejecting his testimony; (2) failing to provide legally sufficient reasons for partially discrediting the opinion of Dr. Lear; and (3) erroneously finding that he performed substantial gainful work activity after his alleged disability onset date.  The Commissioner maintains that her decision is based on substantial evidence and correct legal standards.

For the reasons that follow the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.  Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here, at step one, the ALJ found Mills had engaged in substantial gainful activity since his alleged disability onset date, in 2001 and 2002.  See 20 C.F.R. § 404.1520(b).

Nevertheless, the ALJ gave Mills the benefit of the doubt and continued to step two of the sequential evaluation.

At step two the ALJ found Mills had the following severe impairments: a history of cardiac disease and myocardial infarction; a history of neuroma of the foot; back pain; and sensory neuropathy. See 20 C.F.R. § 404.1520(c).

At step three the ALJ determined that Mills' impairments did not meet or equal the requirements of a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

The ALJ assessed Mills with the residual functional capacity (RFC) to perform sedentary and light work involving: lifting up to 20 pounds occasionally and 10 pounds frequently; standing and walking for six hours in an eight hour day; sitting for six hours in an eight hour day; only occasionally balancing, stooping, kneeling, crouching or crawling; only occasionally climbing ramps and stairs; and never climbing ladders, ropes or scaffolds. See 20 C.F.R. §§ 404.1520(e), 404.1545.

At step four the ALJ found Mills remained capable of performing his past work as a Reliability Engineer. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f). Accordingly, the ALJ found Mills was not disabled at step four.

Notwithstanding his finding at step four, the ALJ also made a finding at step five that Mills remained capable of performing other work existing in significant numbers in the national

economy such as software quality control worker.  <u>See</u> 20 C.F.R.
§§ 404.1520(a)(4)(v), 404.1520(g).

<u>**DISCUSSION**</u>

I.    **<u>The ALJ provided legally sufficient reasons for discrediting
Mills'subjective reports.</u>**

According to Mills, the ALJ's reasons for finding him less
than fully credible do not rise to the legal standard.  The
Commissioner maintains the ALJ's reasons are clear and
convincing, and supported by substantial evidence.

The ALJ is not required to credit every allegation of
disabling pain or else disability benefits would be available on
demand.  <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989).
However, once a claimant establishes the existence of an
impairment and a causal relationship between the impairment and
some level of symptoms, the ALJ must provide clear and convincing
reasons, supported by substantial evidence, for rejecting the
claimant's subjective claims.  <u>Morgan v. Commissioner of Social
Sec. Admin</u>., 169 F.3d 595 (9th Cir. 1999); <u>see also</u> <u>Thomas v.
Barnhart</u>, 278 F. 3d 947, 958-59 (9th Cir. 2002).

In assessing a claimant's credibility the ALJ may consider:
(1) ordinary techniques of credibility evaluation, such as the
claimant's reputation for truthfulness, prior inconsistent
statements concerning the symptoms, and other testimony by the
claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication.  See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

In this case the ALJ listed multiple reasons for discrediting Mills.  First, the ALJ determined that Mills' activities of daily living and general activity level since his alleged disability onset date were not "that of someone who is incapacitated most days of the month" as Mills claimed to be. The ALJ cited the following activity reports in the record: in August 2000, Dr. Lear noted that Mills was staying active, had no problems, and was "doing great"; in November 2000 Mills was unaffected by the exercise of a stress test and able to talk throughout in a normal tone; in September 2001, although Mills was hospitalized for chest pain his discomfort abated with the exercise of a stress test and he seemed "very fit"; in November 2001 Dr. Lear stated that Mills could not do a job that required bending, stooping or lifting, but that he was not limited from a cardiac standpoint; in October 2002 Mills was "feeling great," "doing great" and riding his bicycle and walking; in January 2003

Mills reported the following activities: walking 30 minutes a day, bicycling, working on his car, gardening, doing some wood-working and home repair, helping his wife with housework, shopping, going to movies and visiting friends, using the internet for several hours a day, and watching television several hours a day; in August 2003 Dr. Lear recommended that Mills start doing yoga to treat his back pain; in November 2003 Mills reported using a rowing machine at least four times a week; and in October 2004 Mills testified to using the treadmill everyday for at least 20 minutes.

Mills argues that the ALJ should not dismiss his pain complaints based on his activity level because he exercises through the pain in order to manage his cardiac condition.  He also argues that his other activities are not physically onerous and therefore should not count against him.

A disability claimant will not be penalized for attempting to maintain a sense of normalcy in his life.  However, when a claimant's level of activity is inconsistent with his claimed limitations, his activities will have a bearing on his credibility.  See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998).  I find the ALJ reasonably concluded that Mills' activities were inconsistent with his claim that at least five days a week he could only stand for five to 10 minutes at a time,

and his wife's report that in a good week he would still have two to four bad days when he was unable to get out of bed.

The ALJ's second reason for discrediting Mills was the lack of objective medical evidence to substantiate his current complaints. The ALJ found that although Mills had a history of severe cardiac disease, having survived a heart attack and surgery in 1999, test results during the period under review (June 2000 to October 2004) were repeatedly benign. The ALJ also noted that in spite of Mills' ongoing complaints of chest pain and use of nitroglycerin, testing showed no significant recurrence of the condition or objective evidence to support his current complaints.

Mills argues that the ALJ wrongly concluded that Dr. Lear found Mills essentially unlimited in his activity from a cardiac standpoint. Mills contends that even though Dr. Lear did make this statement in a chart note dated November 8, 2001, it was inconsistent with his other finding that Mills was a "New York class II" heart patient, and therefore the ALJ should have recontacted Dr. Lear. Yet, as Mills himself acknowledges, the American Heart Association describes a "Class II" rating as indicating only slight limitations, and in any event, Dr. Lear clearly found that Mills had only mild ischemic cardiomyopathy. Mills' interpretation of what "New York Class II" means does not render Dr. Lear's opinion "confusing."

Similarly, with respect to Mills' back condition the ALJ found MRIs and other tests showed degenerative changes and residuals of old surgeries, but no neural compromise. He noted that Pamela Turner, M.D., whom Mills began seeing after he dropped Dr. Lear for prescribing only yoga for his back pain, concluded that Mills' back issues were old, and related to a laminectomy in 1980, after which he worked for 20 more years. Further, Cecilia Keller, M.D., diagnosed spinal stenosis and mild peripheral sensory neuropathy based on Mills' complaints, but noted that the MRI did not show significant pathology. Dr. Keller prescribed anti-inflammatories and physical therapy.

Mills contends the ALJ erred by finding there was only one objective finding substantiating his claimed back spasms, and by dismissing it because spasms were also measured in Mills' neck, of which Mills did not complain. In fact the ALJ did review the evidence Mills points to, and correctly stated that the results showed sensory neuropathy without clear evidence of radicular involvement, post-surgical changes, and mild degenerative changes. In light of these mild objective findings and lack of a clear etiology, it was reasonable for the ALJ to dismiss Mills' subjective complaints of disabling back pain.

The ALJ's third reason was that Mills did not require much medical intervention or pain medication to address his allegedly disabling pain. He noted that Mills used only asprin for pain

relief.  The ALJ also cited Mills' admissions that his pain was no more than a three out of ten and that he could do heavy lifting while wearing a special belt.

Mills argues that contrary to the ALJ's finding he was taking Oxyxodone for pain, not just aspirin.  Indeed, Mills did testify to this at the hearing,  However, since this appeared to be a new development it was not unreasonable for the ALJ to question Mills' complaints of disabling pain based on the lack of prescription pain intervention during the majority of the period under review.

Finally, the ALJ found Mills' credibility questionable due to inconsistent reporting and exaggerated statements to physicians.  The ALJ found that although Mills claimed he had to stop working because he could only put in a few hours a day at his job for Hewlett Packard, he admitted he received a retirement package when he stopped working and his work evaluations were very favorable.  The ALJ also found inconsistency in the fact that Mills used a cane and a walker though ambulatory assistance was not medically necessary.  He also noted that Mills discontinued seeing Dr. Lear because he was dissatisfied that Dr. Lear only prescribed yoga.  Lastly, the ALJ noted that Mills self-diagnosed an alleged knee problem and discontinued taking a prescription medicine he believed was causing it, though no doctor agreed with him.

Mills states that it was not inconsistent for him to contend he was forced to quit working despite his employer's satisfaction with his work product because "other workers were dissatisfied with the amount of time he was allowed to take off." This statement is irrelevant, and does not call into question the ALJ's finding that Mills did not stop working due to disability, but actually retired.

In sum, I find substantial evidence to support these clear and convincing reasons to discredit Mills.

## II.  **The ALJ provided legally sufficient reasons for rejecting Dr. Lears' opinion.**

Mills alleges the ALJ failed to provide legally sufficient reasons for rejecting the April 30, 2003 summary disability opinion of Jeffrey Lear, M.D.  In a letter written in support of Mills' disability application Dr. Lear states that based on a combination of back and heart problems it would be "very difficult, if not impossible, for [Mills] to consider any physically demanding job."  Dr. Lear opined that Mills would need "an unusual number of breaks" even to manage sitting through a 40 hour workweek, and would be unable to stand in one place "for any length of time."  Finally, Dr. Lear stated that "it is difficult...to imagine what 40 hour per week job [Mills] could reasonably be expected to do."

Since Dr. Lear's opinion was contradicted by other physicians of record the ALJ only needed to cite "specific and

legitimate" reasons to reject it, contrary to Mills' contention that clear and convincing reasons were required.  See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600-601 (9th Cir. 1999); see also 20 C.F.R. § 404.1527(d)(2)(physician's opinion is entitled to controlling weight only when supported by medically acceptable diagnostic techniques and when not inconsistent with other substantial evidence in the record).

Further, Dr. Lear's opinion took the form of an improper administrative finding he was not qualified to make.  Id.  A doctor's statement about a claimant's ability to work is not a proper medical source opinion, but an administrative finding reserved to the Commissioner.  SSR 96-5p.  Because a medical source does not have the expertise to comment on the vocational component of disability, a statement by a medical source that a person is unable to work is not accorded much weight.  See 20 C.F.R. § 404.1527(e)(1).

The reasons the ALJ cited for discrediting Dr. Lear were that Dr. Lear's opinion was not consistent with Mills' reported activity level, his own treatment records (which Mills himself admits on page 16 of his Memorandum), or the objective medical evidence.  After a thorough examination of the record I find these to be specific and legitimate reasons supported by

substantial evidence.   According, I find no merit to Mills'
claim.

**III. <u>No error resulted from the ALJ finding that Mills performed
substantial gainful activity after his allegedly onset of
disability.</u>**

According to Mills the ALJ erred by concluding that Mills
had performed substantial gainful activity after his alleged
onset date.   The ALJ did make this finding in his written opinion
after reviewing an earnings record indicating that Mills received
$14,500 in 2001 and $1929.45 in 2002.   However, the ALJ
ultimately gave Mills the benefit of the doubt in this matter
because he proceeded to the next step in the sequential
evaluation.   In other words, the ALJ's statement did not affect
the ultimate disposition in this case.   Accordingly, I need not
address Mills' argument that retirement benefits and deferred
disability insurance compensation should not be considered
substantial gainful activity.

<u>CONCLUSION</u>

Based on the foregoing, the Commissioner's decision is
AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 10_ day of October, 2006.

_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Court Judge

14 - OPINION AND ORDER